UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

STEVE VALDIVIA,

               Petitioner,

    v.

M. D. BITER,

               Respondent.

No. CV 13-07736-VBK

MEMORANDUM AND ORDER DENYING
FIRST AMENDED PETITION FOR WRIT
OF HABEAS CORPUS AND DISMISSING
CASE WITH PREJUDICE

## INTRODUCTION; SUMMARY OF RULING

On October 18, 2013, Petitioner Steve Valdivia, a California state prisoner proceeding pro se, initiated this federal habeas action by filing a form "Petition for Writ of Habeas Corpus by a Person in State Custody 28 U.S.C. § 2254." On August 18, 2014, Petitioner filed a form "First Amended Petition [etc.]," and that First Amended Petition is the current petition of record in this action. On October 15, 2014, Respondent filed an "Answer" to the First Amended Petition, together with an attached "Memorandum of Points and Authorities" in support of the Answer (sometimes hereinafter "R's MPA"). On January 20, 2015, Petitioner filed a "Traverse" to Respondent's Answer.

Briefing having now been deemed completed, the case is ready for decision.   Having reviewed the allegations of the First Amended Petition, the matters set forth in the record, and the parties' filings, it is hereby ORDERED that the First Amended Petition is DENIED and this case is DISMISSED WITH PREJUDICE.

## **PROCEDURAL HISTORY**

On August 31, 2010, a jury in the Los Angeles County Superior Court found Petitioner guilty of shooting at an occupied vehicle (in violation of California Penal Code ["P.C."] § 246, count 3) and guilty of assault with a semiautomatic weapon (P.C. § 245(b), count 6).  (See 2 CT 284, 286; Lodgment 4 at 1.)   The jury also found true an allegation that Petitioner personally used a firearm in both of the offenses.  (See 2 CT 284, 286; Lodgment 4 at 1.)

In a bifurcated second phase of the trial, the jury also found true an allegation that Petitioner had committed the offenses charged in count 3 "for the benefit of, at the direction of, [or] in association with a criminal street gang . . . within the meaning of [P.C. §] 186.22(b)(1)(C)."   (2 CT 285; Lodgment 4 at 1.)

Petitioner was sentenced to 15 years to life for the gang allegation, pursuant to P.C. § 186.22(b)(4)(B); and a six year sentence imposed for the assault was ordered to run concurrently; and sentences for the firearm enhancements were stayed (pursuant to P.C. § 654).  (See Lodgment 4 at 1; 2 CT 289-91, 322-23.)

Petitioner filed a direct appeal in the California Court of Appeal (Lodgment 3); and on May 24, 2012, the Court of Appeal denied that appeal in a reasoned, unpublished opinion.  (Lodgment 4.)

Petitioner then filed a Petition for Review in the California

1  Supreme Court (Lodgment 5); and on August 13, 2012, the California
2  Supreme Court denied that Petition for Review without comment or
3  citation to authority.  (Lodgment 6.)

4  Petitioner did not file any state habeas petitions in the
5  California state courts with respect to this judgment of conviction.
6  (See Petition at 3.)

7  As noted, Petitioner initiated this federal habeas action on
8  October 18, 2013; and that original Petition contained three claims.
9  (See Docket No. 1.)   The case was originally assigned to both a
10 District Judge and this Magistrate Judge; but both Petitioner and
11 Respondent filed forms consenting to allow the Magistrate Judge to
12 enter dispositive rulings (see Docket Nos. 2, 7, 27); and the Court
13 ultimately issued a "Notice to Counsel from Clerk," noting that all
14 parties had consented to proceed before the Magistrate Judge, and
15 specifying that the District Judge's designation be removed from the
16 case number.  (See Docket No. 28.)

17 On November 22, 2013, Respondent moved to dismiss the original
18 Petition on the grounds that two of the three claims raised in that
19 Petition were unexhausted.  (See Docket No. 8.)

20 On February 24, 2014, Petitioner filed an Opposition to
21 Respondent's Motion to Dismiss.  (Docket No. 15.)  Also on February
22 24, 2014, Petitioner filed a document entitled "Petitioner's Request
23 for a Kelly Stay," requesting that the Court stay this federal habeas
24 action pursuant to Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003),
25 because "if the Court determines any claims are unexhausted the Court
26 consider the full scope of his Opposition in that if there are claims
27 unexhausted it would've been appellate counsel's sole responsibility
28 at that time."  (See Docket No. 16 at 1.)

3

On April 8, 2014, the Court issued a "Memorandum and Order Granting Respondent's Motion to Dismiss with Leave to Amend," and dismissing the two unexhausted claims from the Petition, but allowing Petitioner to file a First Amended Petition containing only the single exhausted claim that was in the original Petition, and granting Petitioner a stay, pursuant to <u>Kelly v. Small</u>, to allow Petitioner to return to state court and exhaust his two other unexhausted claims. (<u>See</u> Docket No. 18.)

As noted, on August 18, 2014, Petitioner filed the instant First Amended Petition, containing only one claim. (<u>See</u> Docket No. 23.) On September 15, 2014, Petitioner filed a further document entitled "Notice of Intent to Proceed on First Amended Petition," confirming that the First Amended Petition would be the current petition of record. (<u>See</u> Docket No. 29.)[1]

---

[1] In that Notice, Petitioner stated that "[a]fter careful consideration of the pertinent filing dates and applicable deadlines under the AEDPA, Petitioner has learned that any unexhausted claims that he could have attempted to exhaust in the state courts would be untimely under the provision of 28 U.S.C. § 2244. [¶] Therefore, Petitioner respectfully requests that the Court lift any stay and proceed on his exhausted claim as set forth in the [First Amended Petition]." (<u>See</u> Docket No. 29.)

The Court notes that the Ninth Circuit recently held, in two related cases, <u>Mitchell v. Valenzuela</u>, ___ F.3d ___, 2015 WL 3980746 (9th Cir. July 1, 2015) and <u>Bastidas v. Chappell</u>, ___ F.3d ___, 2015 WL 3972942 (9th Cir. July 1, 2015), that a Magistrate Judge, who was assigned to a case with a District Judge, and who was only assigned to the case for limited purposes, was without power under 28 U.S.C. § 636 to deny a habeas petitioner's request for a <u>Kelly</u> stay. <u>See</u>, <u>e.g.</u>, <u>Mitchell v. Valenzuela</u>, 2015 WL 3980746, at *1.

In light of Petitioner's voluntary dismissal of his two unexhausted claims from this action, the parties' election to consent to proceed before the Magistrate Judge, and the fact that the Court did not deny Petitioner a <u>Kelly</u> stay, the Court notes that the Ninth Circuit's recent holdings in <u>Mitchell</u> and <u>Bastidas</u> are not directly relevant or controlling here.

**FACTUAL BACKGROUND**

The California Court of Appeal set forth a factual background in its unpublished opinion (see Lodgment 4 at 2-3) which this Court summarizes and supplements with its own review of the record as follows:

At approximately 4:15 a.m. on August 1, 2007, Los Angeles County Sheriff's Deputy Shawn Dumser heard gunshots while on patrol in Hawaiian Gardens, California. Deputy Dumser saw a green Honda Civic in the area, and he pursued and stopped the vehicle. Dumser was acquainted with the Honda driver, Edward Solorzano ("Solorzano"), and knew him to be a gang member.

Solorzano was frightened and yelled: "Dumser. They're shooting at me. Those fuckers in the white car are shooting at me." Just then, a white car came into view. Officer Dumser pursued the white car, and the car stopped in a parking lot. Three men were in the white car. The men were later identified as Petitioner, a man named "Louis Duby," and a man named "Gustavo Aquino." Petitioner and Duby ran away. Dumser detained Aquino.

Another deputy responding to the scene saw Petitioner and Duby running. The deputy captured Duby, but Petitioner climbed a fence into a nursery. A third deputy, positioned near the nursery, arrested Petitioner. A .22-caliber magazine with three bullets was recovered in a search of the area around the nursery.

In a post-arrest interview with Deputy Dumser, Petitioner admitted that he was becoming a member of the Chivas gang that night. He also admitted that he had been armed with a gun, and he threw the gun as far as he could when he climbed over the fence into the nursery.

On August 7, 2007, Detective Brandt House interrogated Solorzano in jail. Solorzano told House that, while driving around on the night of the shooting, he noticed that he was being followed by a white car. Solorzano accelerated and ran multiple red lights in an attempt to get away, and several shots were fired at his vehicle by someone in the white car. Solorzano admitted that he was a member of the Hawaiian Gardens gang; and he believed that the men in the white car were from the rival Chivas or Artesia gangs.

The trial court granted a defense motion to bifurcate the trial on the guilt phase of the charges from the trial on the gang enhancement. During the first part of the trial, Detective House testified as the prosecution's gang expert. He testified that Solorzano was a member of the Hawaiian Gardens gang, Aquino was a member of the Chivas gang, and Petitioner and Duby were "affiliates" of the Chivas gang. Detective House testified that the shooting occurred in the territory of the Hawaiian Gardens gang. Detective House also testified that the Chivas gang was "for all intents and purposes" the same gang as the Artesia gang.

At the first part of the trial, Solorzano recanted the statements that he had made to Detective House, and the testimony that he had given at the preliminary hearing that was consistent with his statements to Detective House. Now, at the first part of the trial, Solorzano claimed a total lack of memory of the incident.

After the verdict on the offenses, the bifurcated second trial on the gang enhancement began. Detective House again testified as the prosecution's gang expert; and he testified that Hawaiian Gardens and Chivas/Artesia were criminal street gangs, and he also gave testimony establishing two prior "predicate offenses." Detective House opined,

based on a hypothetical which tracked the evidence, that Petitioner's offenses were committed for the benefit of the Chivas/Artesia gang.

### PETITIONER'S CONTENTIONS

The Petition presents the following one ground for relief:

1.    There was insufficient evidence to support the gang enhancement for the shooting conviction on count 3 because the prosecution's gang expert only presented evidence of one "predicate act" committed by the Artesia gang, and one "predicate act" committed by the  Chivas gang; and Petitioner argues that, since the gang enhancement statute requires evidence of "two predicate acts" committed by one gang, that is, the same gang, and since he was only affiliated with the Chivas gang, there was insufficient evidence to support the enhancement, notwithstanding the prosecution's gang expert's testimony that Chivas and Artesia were essentially the same and could be counted as one gang.  (See Petition at 6.)

### DISCUSSION

### I

### STANDARD OF REVIEW

**A.    AEDPA Standards.**

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Koerner v. Grigas, 328 F.3d 1039, 1044 (9th Cir. 2003).  As explained by the Supreme Court, the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."  Williams v. Taylor, 529 U.S. 362, 412 (2000); see also

1  Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) ("Statutes such as
2  AEDPA have placed more, rather than fewer, restrictions on the power
3  of federal courts to grant writs of habeas corpus to state
4  prisoners.").

5      Under the AEDPA, a federal court may not grant a writ of habeas
6  corpus on behalf of a person in state custody "with respect to any
7  claim that was adjudicated on the merits in state court proceedings
8  unless the adjudication of the claim (1) resulted in a decision that
9  was contrary to, or involved an unreasonable application of, clearly
10 established federal law, as determined by the Supreme Court of the
11 United States; or (2) resulted in a decision that was based on an
12 unreasonable determination of the facts in light of the evidence
13 presented in the state court proceeding." 28 U.S.C. §2254(d).

14     Section "2254(d)(1)'s 'contrary to' and 'unreasonable
15 application' clauses have independent meaning." Bell v. Cone, 535
16 U.S. 685, 694 (2002). The Supreme Court has explained that:

17              [u]nder the "contrary to" clause, a federal habeas
18              court may grant the writ if the state court arrives at
19              a conclusion opposite to that reached by this Court on
20              a question of law or if the state court decides a case
21              differently than this Court has on a set of materially
22              indistinguishable facts. Under the "unreasonable
23              application" clause, a federal habeas court may grant
24              the writ if the state court identifies the correct
25              governing legal principle from this Court's decisions
26              but unreasonably applies that principle to the facts of
27              the prisoner's case.

28 Williams, 529 U.S. at 412-13; see also Brown v. Payton, 544 U.S. 133,

1  141 (2005); <u>Weighall v. Middle</u>, 215 F.3d 1058, 1061 (9th Cir. 2000)

2  (discussing <u>Williams</u>).

3  "A state court's determination that a claim lacks merit precludes

4  federal habeas relief so long as 'fairminded jurists could disagree'

5  on the correctness of the state court's decision." <u>Harrington v.</u>

6  <u>Richter</u>, ___ U.S. ___, 131 S.Ct. 770, 786 (2011) (quoting <u>Yarborough</u>

7  <u>v. Alvarado</u>, 541 U.S. 652, 664 (2004)). "Under § 2254(d), a habeas

8  court must determine what arguments or theories supported or . . .

9  could have supported, the state court's decision; and then it must ask

10  whether it is possible fairminded jurists could disagree that those

11  arguments or theories are inconsistent with the holding in a prior

12  decision of this Court." <u>Harrington</u>, 131 S. Ct. at 786.  It is not

13  necessary for the state court to cite or even to be aware of the

14  controlling federal authorities "so long as neither the reasoning nor

15  the result of the state-court decision contradicts them." <u>Early v.</u>

16  <u>Packer</u>, 537 U.S. 3, 8 (2002); <u>see also</u> <u>Smith v. Hedgpeth</u>, 706 F.3d

17  1099, 1102 (9th Cir. 2013) (citing <u>Early</u>).

18  While Supreme Court precedent is the only authority that is

19  controlling under the AEDPA, this Court may also look to Ninth Circuit

20  case law as persuasive authority "for purposes of determining whether

21  a particular state court decision is an 'unreasonable application' of

22  Supreme Court law." <u>Howard v. Clark</u>, 608 F.3d 563, 568 (9th Cir.

23  2010) (citation omitted).

24  Furthermore, the AEDPA provides that state court findings of fact

25  are presumed to be correct unless a petitioner rebuts that presumption

26  by clear and convincing evidence. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Miller-</u>

27  <u>El v. Cockrell</u>, 537 U.S. 322, 340 (2003) (citing § 2254(e)(1)).

28  Where a higher state court has denied a petitioner's claim

9

without substantive comment, a federal habeas court "looks through" such a denial to the "last reasoned decision" from a lower state court to determine the rationale for the state courts' denials of the claim. See Cannedy v. Adams, 706 F.3d 1148, 1156 (9th Cir. February 7, 2013) (citing, inter alia, Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). There is a presumption that a claim that has been silently denied by a state court was "adjudicated on the merits" within the meaning of 28 U.S.C. § 2254(d), and that AEDPA's deferential standard of review applies, in the absence of any indication or state-law procedural principle to the contrary. See Johnson v. Williams, ___ U.S. ___, 133 S. Ct. 1088, 1094 and n.1 (February 20, 2013) (citing, inter alia, Richter, 131 S. Ct. at 784-85 and Ylst, 501 U.S. at 806). Here, looking through the California Supreme Court's silent denial of Petitioner's direct appeal, it is clear that the California Court of Appeal considered and denied the one ground presented in the instant First Amended Petition on the merits; and accordingly, AEDPA's deferential standard of review applies to that claim. See id.

## B.    Ground One: Sufficiency of Evidence of Gang Enhancement.

As noted, in Ground One Petitioner contends that the conviction and the 15-years-to-life sentence that he received as a result of the jury's "true" finding on the gang enhancement allegation were not supported by sufficient evidence. Petitioner apparently argues that the prosecution presented evidence that the Chivas gang (the gang that Petitioner was allegedly in the process of joining) committed one "predicate offense"; and the Artesia gang (of which Petitioner was not a member) committed another, single "predicate offense"; but neither the Chivas gang nor the Artesia gang committed the requisite "two or

more" predicate offenses required to satisfy the gang enhancement statute as set forth at P.C. § 186.22.  (See Petition at 6; see also Lodgment 3, Petitioner's Opening Brief at 20, citing, inter alia, People v. Hernandez, 33 Cal. 4th 1040, 1047, 94 P.3d 1080, 1084-85 (2004).) Petitioner complains that the prosecution's expert improperly elided the difference between the Chivas gang and the Artesia gang, testifying that they were essentially one and the same gang; and this testimony allowed the prosecution to improperly argue that the statutory requirement of "two or more" predicate offenses committed by the same gang was satisfied. (See Petition at 6; Lodgment 3 at 20 et seq.)

### 1.   California Court of Appeal Opinion.

The California Court of Appeal characterized Petitioner's contention as "there was insufficient evidence to support the gang enhancement because the prosecution only presented evidence of one predicate act by the Chivas gang"; and the Court of Appeal said "[w]e disagree." (Lodgment 4 at 5.)

The Court of Appeal stated that, under California law, a "criminal street gang" is "any ongoing organization, association, or group of three or more persons, whether formal or informal" that has as one of its "primary activities" the commission of one or more statutorily enumerated criminal offenses and through its members engages in a "pattern of criminal gang activity." (Lodgment 4 at 5, citing P.C. § 186.22(f) and People v. Sengpadychith, 26 Cal.4th 316, 319-320 (2001).)  "To establish a pattern of criminal gang activity, the prosecution must prove the commission of two or more predicate offenses committed on separate occasions by two or more gang members."

11

1  (Lodgment 4 at 5, citing P.C. §§ 186.22(a), (e), and (i), and People

2  v. Duran, 97 Cal. App. 4th 1448, 1457 (2002).)   The Court of Appeal

3  also stated that under California law "[t]he charged offense may serve

4  as a predicate offense."   (See Lodgment 4 at 5, citing Duran, id.)

5       The Court of Appeal stated that:

6            Here, the prosecution offered evidence of one qualifying

7            offense committed by an Artesia gang member, and another

8            qualifying offense committed by a member of the Chivas gang.

9            The prosecution's gang expert, however, testified that the

10           Artesia and Chivas gangs were elements of the same criminal

11           street gang.   He testified that Chivas "was once a very

12           large clique or subgroup of Artesia; it got so big it became

13           its own gang.   However, Chivas and Artesia for all intents

14           and purposes should be considered the same gang, because

15           they are completely loyal to one another."

16  (Lodgment 4 at 5-6; quotation in original.)

17       The Court of Appeal noted Petitioner's argument that "the

18  evidence shows that Chivas and Artesia were separate and distinct

19  gangs even though they shared a common origin and continuing loyalty

20  and allegiance to each other."   (Lodgment 4 at 6.)   In dismissing that

21  argument, the Court of Appeal stated:

22           We note that Detective House often referred to the Chivas

23           and Artesia gangs separately, but concluded that they were

24           a   single   criminal   street   gang   "for   all   intents   and

25           purposes."   Although somewhat idiomatic, the phrase "for all

26           intents and purposes" means for every functional, relevant,

27           or material purpose.   Despite any semantic issue, the gang

28           expert concluded that Chivas and Artesia were a single gang

1                  based on his unchallenged expertise.  The predicate acts

2                  element of the gang enhancement is a factual question and

3                  the jury could reasonably interpret House's testimony as

4                  establishing that Chivas and Artesia was a single gang.

5 (Lodgment 4 at 6.)

6      Lastly, the Court of Appeal stated that "[i]n any event, there

7 was one uncontested predicate act, and the current offense qualifies

8 as a second predicate act."  (Lodgment 4 at 6, citing <u>Duran</u>, 97 Cal.

9 App. 4th at 1457.)

10

11        **2.**   **Applicable Federal Law.**

12      The Fourteenth Amendment's Due Process Clause guarantees that a

13 criminal defendant may be convicted only "upon proof beyond a

14 reasonable doubt of every fact necessary to constitute the crime with

15 which he is charged."  <u>In re Winship</u>, 397 U.S. 358, 364 (1970).  The

16 Supreme Court subsequently announced the federal standard for

17 determining the sufficiency of the evidence to support a conviction in

18 <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).  <u>See</u> <u>Fiore v. White</u>, 531

19 U.S. 225, 228-229 (2001) ("We have held that the Due Process Clause of

20 the Fourteenth Amendment forbids a State to convict a person of a

21 crime without proving the elements of that crime beyond a reasonable

22 doubt") (citing <u>Jackson</u>, 443 U.S. at 316 and <u>In re Winship</u>, 397 U.S.

23 at 364); <u>see also</u> <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir.

24 2005) (<u>Jackson</u> standard applies to federal habeas claims attacking the

25 sufficiency of the evidence to support a state conviction); <u>Chein v.</u>

26 <u>Shumsky</u>, 373 F.3d 978, 982-84 (9th Cir. 2004) (en banc) (same).  Under

27 the <u>Jackson</u> standard, "the relevant question is whether, after viewing

28 the evidence in the light most favorable to the prosecution, <u>any</u>

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original). "Put another way, the dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein, 373 F.3d at 982-83 (quoting Jackson). In applying the Jackson standard, the federal court must refer to the substantive elements of the criminal offense as defined by state law at the time that a petitioner committed the crime and was convicted, and look to state law to determine what evidence is necessary to convict on the crime charged. See Jackson, 443 U.S. at 324 n.16; see also Boyer v. Belleque, 659 F.3d 957, 965 (9th Cir. 2011) (when assessing sufficiency of evidence claim in habeas petition, court looks to state law to establish elements of crime, then turns to federal question of whether state court was objectively unreasonable in concluding that evidence was sufficient) (citation, bracketed material, and internal punctuation omitted).

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H., 408 F.3d at 1274. All evidence must be considered in the light most favorable to the prosecution. Jackson, 443 U.S. at 319. When the factual record supports conflicting inferences, the federal court must presume - even if it does not affirmatively appear on the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution. Jackson, 443 U.S. at 326; see also Wright v. West, 505 U.S. 277, 296-97 (1992) (citing Jackson and discussing presumption resolving conflicting inferences in

14

1  favor of prosecution); <u>Bruce v. Terhune</u>, 376 F.3d 950, 957 (9th Cir.

2  2004) (per curiam) (citing <u>Jackson</u>).

3      Moreover, a reviewing court "must respect the province of the

4  jury to determine the credibility of witnesses, resolve evidentiary

5  conflicts, and draw reasonable inferences from proven facts by

6  assuming that the jury resolved all conflicts in a manner that

7  supports the verdict." <u>Walters v. Maass</u>, 45 F.3d 1355, 1358 (9th Cir.

8  1995). Furthermore, "[a] jury's credibility determinations are . . .

9  entitled to near-total deference under <u>Jackson</u>." <u>Bruce</u>, 376 F.3d at

10  957; <u>see also</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995) ("under

11  <u>Jackson</u>, the assessment of the credibility of witnesses is generally

12  beyond the scope of review"); <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434

13  (1983) (federal habeas court cannot redetermine the credibility of a

14  witness when the demeanor of the witness was not observed by the

15  federal court). It is also well-settled that the testimony of even a

16  single witness is sufficient to support a conviction under the <u>Jackson</u>

17  standard. <u>See</u> <u>Bruce</u>, 376 F.3d at 957-58 (testimony of a single

18  witness is sufficient to uphold a conviction); <u>see also</u> <u>United States</u>

19  <u>v. McClendon</u>, 782 F.2d 785, 790 (9th Cir. 1986) (same); <u>United States</u>

20  <u>v. Larios</u>, 640 F.2d 938, 940 (9th Cir. 1982) (same). Furthermore,

21  "[c]ircumstantial evidence and inferences drawn from it may be

22  sufficient to sustain a conviction." <u>Walters v. Maass</u>, 45 F.3d 1355,

23  1358 (9th Cir. 1995) (citation and internal quotation marks omitted).

24  <u>See also</u> <u>Jones v. Wood</u>, 207 F.3d 557, 563 (9th Cir. 2000) (evidence

25  may be found sufficient even where it "was almost entirely

26  circumstantial and relatively weak"; and fact that reviewing court may

27  have reached different result or have reasonable doubt not enough to

28  overcome <u>Jackson</u>'s "high standard"). Ultimately, "it is the

responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, ___ U.S. ___, 132 S. Ct. 2, 4 (2011) (per curiam).

Lastly, under AEDPA, federal courts must "apply the standards of Jackson with an additional layer of deference." Juan H., 408 F.3d at 1274; Boyer v. Belleque, 659 F.3d 957, 964 (9th Cir. 2011) (where Jackson claim is "subject to the strictures of AEDPA, there is a double dose of deference that can rarely be surmounted"). Even where a state court decision does not cite to or discuss the relevant Jackson standard, habeas relief is not warranted "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. Juan H., 408 F.3d at 1275 n.12 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)). The question for a federal habeas court is whether "the state court in substance made an objectively unreasonable application of the Winship and Jackson standards for sufficiency of the evidence." Juan H., 408 F.3d at 1275 n.12.

### 3.   **Further Background, Legal Authorities.**

The record reflects that the trial court correctly instructed the jury on the pertinent elements of the gang enhancement statute, P.C. § 186.22(b)(1), which are: (1) the group is an ongoing association of three or more persons sharing a common name, identifying sign, or symbol; (2) one of the group's primary activities is the commission of one or more statutorily enumerated criminal offenses; and (3) the group's members must engage in, or have engaged in, a pattern of criminal gang activity. (See 4 RT 1217.) See also Duran, 97 Cal. App. 4th at 1457 (setting forth elements of P.C. § 186.22(b)(1)).

16

1 | The trial court also instructed the jury that:

2 |     It is alleged in Counts 3 and 6 [sic] that the crimes

3 | charged were committed for the benefit of, at the direction

4 | of, or in association with a criminal street gang with the

5 | specific intent to promote, further, or assist in any

6 | criminal conduct by gang members. [¶] "Criminal street gang"

7 | means any ongoing organization, association, or group of

8 | three or more persons, whether formal or informal, () having

9 | as one of its primary activities the commission of one or

10 | more of the following criminal acts:   Health and Safety

11 | violation 11378 [sic] and Penal Code section 245(a)(2) and

12 | (2) having a common name or common identifying sign or

13 | symbol and (3) whose members individually or collectively

14 | engage in, or have engaged, in a pattern of criminal gang

15 | activity. [¶]  "Pattern of criminal gang activity" means the

16 | <u>commission of, sustained juvenile petition for, or</u>

17 | <u>conviction of two or more of the following crimes, namely,</u>

18 | <u>Health and Safety Code section 11378 and Penal Code section</u>

19 | <u>245(a)(2)</u> . . . . [¶] . . . In determining this issue you

20 | should consider any expert opinion evidence offered, as well

21 | as evidence of a past or present conduct by gang members

22 | involving the commission of one or more of the identified

23 | crimes include the crimes charged in this proceeding.

24 | (4 RT 2125-26; emphasis added.)   <u>See also Duran</u>, 97 Cal. App. 4th

25 | 1448, 1457-58 (discussing requirement of "two or more enumerated

26 | 'predicate offenses'"; and noting that "[t]he charged crime may serve

27 | as a predicate offense").

28 | As Respondent notes, Detective Brandt House testified as the

1  prosecution's gang expert at the first phase of the trial.  (See 3 RT
2  987 et seq.)  On direct examination, Detective House testified that
3  "the primary rivals of Hawaiian Gardens are the Chivas and Artesia
4  street gangs."  (3 RT 1013.)  He testified that Artesia was a criminal
5  street gang with approximately 160 members, and that Artesia had
6  "common identifying signs and signals," and Artesia claimed the entire
7  city of Artesia and parts of East Lakewood as its territory.  (3 RT
8  1014-15.)  He also testified that Chivas was a criminal street gang
9  with 130 members, and that Chivas had "common identifying signs and
10  signals," and he said that Chivas shared Artesia's territory as their
11  own territory.  (2 RT 1015-16.)  With regard to the relationship
12  between Chivas and Artesia, Detective House explained that Chivas was
13  once part of Artesia and then "it got so big it became its own gang,"
14  yet he said that "Chivas and Artesia for all intents and purposes –
15  should be considered the same gang, because they are completely loyal
16  to one another."  (3 RT 1015.)  Furthermore, on cross-exam, when
17  Petitioner's defense counsel asked "are you making a difference
18  between Artesia and Chivas, or are you counting Artesia and Chivas as
19  one?," Detective House stated, "I'm counting them as one, because for
20  all intents and purposes they're the same."  (3 RT 1028-29.)

21      At the second phase of the bifurcated trial, on the gang
22  enhancement charge (which was apparently held before the same jury
23  that heard the first phase of the trial (see, e.g., 4 RT 2107 et
24  seq.)), Petitioner's counsel informed the jury that "we will not
25  present any witnesses on this particular count [i.e., the gang
26  enhancement], but what I will ask to you do [sic] is consider the
27  witnesses that have already been put forth as to these particular
28  counts."  (4 RT 2108.)  The prosecution then re-called Detective

House. (4 RT 2108-09.) The prosecution had marked as "certified predicates" two cases, one involving a conviction of "Sal Fernandez" for assault with a firearm, in violation of P.C. § 245(a)(2); and one involving a conviction of "Leonardo Delgadillo" for a violation of California Health and Safety Code ["H.S."] § 11378 (which the Court's own review reveals concerns possession for sale of a controlled substance). (See 4 RT 2110-12.) Detective House identified Fernandez as a member of the Artesia gang; and he identified Delgadillo as a member of the Chivas gang. (4 RT 2111-12.) Detective House opined that the two separate offenses, of both Fernandez and Delgadillo, fell "within the primary activities of the Chivas criminal street gang." (4 RT 2112-13; emphasis added.) The prosecutor then posed a hypothetical to Detective House, recounting the details of the shooting and the fact that Petitioner admitted that, after the police asked him if he was a gang member, he said "I was becoming one tonight." (See 4 RT 2113-15.) Detective House then opined that the crimes mentioned in the hypothetical "were committed for the benefit of, in association with, and at the direction of the Chivas criminal street gang." (4 RT 2115.)

In closing at the second phase of the trial, the prosecutor effectively, though not always explicitly, argued that Chivas and Artesia were the same gang. (See 4 RT 2120 et seq.) He began by arguing that the "criminal street gang" at issue for the enhancement was Chivas, and he implied that the "predicate offenses" that he had earlier examined Detective House about, for violations of P.C. § 245(a)(2) and H.S. § 11378, also concerned Chivas (although, as noted above, the P.C. § 245(a)(2) offense was committed by Fernandez, a member of the Artesia gang, and the H.S. § 11378 was committed by

Delgadillo, a member of the Chivas gang.  (See 4 RT 2120-21.)  The prosecutor also noted that he had asked Detective House "[d]oes Chivas or Artesia have a common name or symbol?," and the Detective "said yes, the goat [sic], or for Artesia anything with an 'A'.  They are known as Chivas, common name or symbol."  (4 RT 2121.)  The prosecutor then argued that the two identified predicate offenses satisfied the statutory requirement for a "pattern of criminal gang activity."  (4 RT 2121.)  The prosecutor argued that "[a]ll these elements have been met and I ask you to find this allegation true."  (4 RT 2122.)

Petitioner's defense counsel also made a closing statement, essentially arguing that Petitioner was "impulsive" and had "ADHD" (see 4 RT 2122 et seq.); but he did not explicitly argue that the gang enhancement statute was not satisfied for a lack of evidence.  (See id.)

### 4.  **Analysis.**

At the threshold, this Court notes that federal habeas review is generally not available for claims that merely allege that a state court erred in the interpretation or application of its own state law. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("federal habeas corpus relief does not lie for errors of state law"); Hubbart v. Knapp, 379 F.3d 773, 779-80 (9th Cir. 2004) ("[f]ederal habeas corpus relief is generally unavailable for alleged error in the interpretation or application of state law") (citing, inter alia, Estelle; internal quotation marks and other citations omitted).  Thus, to the extent that the California Court of Appeal found that, under California law, a charged offense could serve as a qualifying "predicate offense," or that two gangs with different names could

theoretically be treated as one gang if there was sufficient evidence to show that they _were_ one gang, those legal conclusions are not subject to federal habeas review here, absent some further showing that those legal conclusions violated a constitutional right. See, e.g., Richmond v. Lewis, 506 U.S. 40, 50 (1992) (state law error is not cognizable on habeas review unless error was so "arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation") (citation and internal quotation marks omitted). The Court's own review of California law confirms that those legal conclusions were consistent with California cases, and not so "arbitrary or capricious" as to constitute a due process violation. See, e.g., Duran, 97 Cal. App. 4th at 1457 ("[t]he charged crime may serve as a predicate offense"); People v. Gardeley, 14 Cal. 4th 605, 720-21 (1996) (gang expert's opinion may form basis for finding that elements of P.C. § 186.22 gang enhancement have been satisfied).

Petitioner's claim here is then quickly disposed of, in light of the California Court of Appeal's finding that the charged offense on count 3, for shooting at an occupied vehicle in violation of P.C. § 246, counted as one of the two required "predicate offenses" necessary to satisfy the statute. The version of P.C. § 186.22 in effect at the time of Petitioner's conviction (from January 1, 2010 to December 31, 2010), stated both that "a felony violation of [P.C.] Section 246" could justify an indeterminate sentence of 15 years to life; and a "pattern of criminal gang activity" could be established from evidence of convictions for "two or more of the following offenses," including "[s]hooting at an [] occupied motor vehicle, as defined in [P.C.] 246." See P.C. §§ 186.22(b)(4)(B), (e)(5). The jury could have reasonably found that Petitioner was acting "for the benefit of, at

the direction of, or in association with a criminal street gang" based on his admission that he was becoming a member of the Chivas gang on the night of the shooting.  The prosecution also presented evidence that Leonardo Delgadillo, a Chivas member, had violated H.S. § 11378, and the prosecutor argued the possession offense could also be considered a "predicate offense" to satisfy P.C. § 186.22.  See, e.g., P.C. § 186.22(e)(4).  Thus, as the Court of Appeal reasonably found, Petitioner's conviction on the charged offense of shooting at an occupied vehicle, done for the benefit of Chivas, taken together with the conviction of Delgadillo, a Chivas member, for possession of a controlled substance, satisfied the statute's requirement of two predicate offenses showing a pattern of criminal gang activity.  See, e.g., Duran, 97 Cal. App. 4th at 1457.

The Court notes that Respondent does not even discuss whether Petitioner's charged offense, together with Delgadillo's offense, could have satisfied the statute; and it could be said that the California Court of Appeal only mentioned this finding in passing. However, even assuming, arguendo, that for some reason Petitioner's charged offense and Delgadillo's conviction together did not satisfy the "two or more predicate offenses" requirement of the statute, the Court of Appeal's finding that the gang's expert's testimony also adequately supported the conviction is entitled to deference.

As noted, the Court of Appeal found that the prosecution's gang expert Detective House's use of the phrase "for all intents and purposes" effectively meant that "[d]espite any semantic issue, the gang expert [had] concluded that Chivas and Artesia were a single gang"; and accordingly the Court of Appeal found that "the jury could reasonably interpret House's testimony as establishing that Chivas and

1 | Artesia was [sic] a single gang." (Lodgment 4 at 6.)  In light of the
2 | standards set forth in <u>Jackson</u> and its progeny, and the deferential
3 | standard of AEDPA review applicable here, it cannot be said that <u>no</u>
4 | rational juror could have found that Chivas and Artesia were not a
5 | single gang.  <u>See</u>, <u>e.g.</u>, <u>Cavazos v. Smith</u>, ___ U.S. ___, 132 S. Ct.
6 | 2, 4 ("it is the responsibility of the jury – not the court – to
7 | decide what conclusions should be drawn from evidence admitted at
8 | trial"); <u>see also</u> <u>Fuentes v. Gonzalez</u>, 457 Fed. Appx. 695, 697-98 (9th
9 | Cir. 2011) (where state presented specific and thorough gang expert
10 | testimony, and fairminded jurists could disagree about correctness of
11 | California Court of Appeal's conclusion that evidence was sufficient
12 | to support conviction, federal habeas relief not warranted under
13 | <u>Jackson</u> and AEDPA standards) (citing, <u>inter alia</u>, <u>Cavazos</u>).  Taken
14 | together, the jury could have found that Chivas and Artesia were
15 | effectively one gang; and that any combination of two of the three
16 | predicate offenses that it was presented with – that is, Fernandez's
17 | firearm assault for Artesia, Delgadillo's possession of a controlled
18 | substance for Chivas, or Petitioner's own charged offense for Chivas
19 | – could have satisfied the gang enhancement statute.  Since the
20 | California Court of Appeal's opinion here was not contrary to, nor an
21 | unreasonable application of, clearly established federal law or, in
22 | particular, the <u>Jackson</u> standards for sufficiency of the evidence,
23 | habeas relief is not warranted on this claim.
24 |
25 | **ORDER**
26 | For all of the foregoing reasons, **IT IS HEREBY ORDERED THAT:**
27 | 1.    The First Amended Petition **IS DENIED;**
28 | 2.    This   Court   declines   to   issue   a   Certificate   of

23

Appealability;[2] and

3.   Judgment be entered denying and dismissing the First Amended Petition with prejudice.

**IT IS SO ORDERED.**

DATED: _7-17-15_

_____
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE

---

[2]   Under 28 U.S.C. §2253(c)(2), a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." The Supreme Court has held that, to obtain a Certificate of Appealability under §2253(c), a habeas petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'." Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595 (2000)(internal quotation marks omitted); see also Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029 (2003). After review of Petitioner's contentions herein, this Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, as is required to support the issuance of a COA.